CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

MAY 05 2014

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | | |
|---|---|---|
| **ADIB EDDIE RAMEZ MAKDESSI,** | ) | **CASE NO. 7:14CV00034** |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **GEORGE HINKLE, ET AL.,** | ) | **By: Glen E. Conrad** |
| | ) | **Chief United States District Judge** |
| **Defendants.** | ) | |

Adib Eddie Ramez Makdessi, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging that the defendant prison officials violated his constitutional rights by forcing him to carry his television in the transportation van, despite his shoulder and back problems, and hampered his efforts to prove his innocence by confiscating legal documents and a law book and denying him access to the law library and a typewriter. Upon review of the record, the court finds that the action must be summarily dismissed.

### Background

On November 6, 2013, officials transferred Makdessi and other inmates from the protective custody unit at Keen Mountain Correctional Center ("KMCC") to the protective custody unit at the newly opened River North Correctional Center ("RNCC"). According to Makdessi, Warden Fleming and his Assistant Warden Clary ordered that each inmate would hold his television on his lap during the three-hour bus ride. Makdessi complained to the transport officers, Lee and Bostic, that he could not hold his television because he had two injured shoulders and arthritis in his back and had not received his pain medication. The officers allegedly said they knew of his medical problems, but had orders to have him hold his television during the ride.

Makdessi says the weight of his 30-pound television caused the hand cuffs to dig painfully into his wrists and his position caused pain in his back and shoulders and made his thumbs go numb. He allegedly called for help, but officers could not hear over the loud music. Makdessi alleges that, when the bus reached RNCC, he was in so much pain, he could not get out of the seat until an officer lifted the television off of him.

During the RNCC medical intake examination, Makdessi told the nurses about his pain and showed them his swollen wrists. His blood pressure was allegedly so high that they thought he was having a heart attack. After he sat and relaxed for awhile and took his pain medication, his blood pressure went back to normal. He alleges that the bus ride conditions "caused more injury to [his] shoulders and to [his] wrists and thumbs are still numb and back pain increased." (Compl. 3.)

When Makdessi received his three boxes of legal materials on November 7, 2013, they were so disorganized that it took him three weeks organize them. He also discovered several items were missing, including a law book, "Prisoner's Guide to Survival." He had used this book for five years, and it was covered with notes about his legal research and exhibits. He learned that RNCC Property Officers Felts and Simpson had confiscated the book as contraband, because it had been altered, with names blacked out and the spine colored.[1] Makdessi appealed the confiscation of his book, but ombudsmen Walls and Murphy and VDOC administrator George Hinkle upheld the action under prison policy. Lt. Davis and Officer R. Phillips at KMCC had allegedly warned Makdessi before his transfer that RNCC officials would confiscate his law book because people were tired of his complaints and lawsuits.

---

[1] Makdessi told officers that after he purchased the book, it was stolen at Wallens Ridge State Prison; when officers found and returned it to him, they allegedly told him that he could write his name all over the book to discourage others from stealing it again. (ECF No. 4, at 2-8.) Because Makdessi could produce no documentation to show that Wallens Ridge or KMCC officials had approved his possession of the book in its altered state, RNCC officers confiscated it.

Makdessi complains that his missing book and documents, and limited access to law library materials and typewriters at RNCC,[2] hampered his litigation efforts. Makdessi has two lawsuits pending in this court (this case and Case No. 7:13CV00097) and an appeal pending in the United States Court of Appeals for the Fourth Circuit. He also asserts that he has filed a "§ 2244 motion to proceed with [his] actual innocence" in the Fourth Circuit. (Compl. 5.) Among the legal materials missing after his transfer were copies of documents from his 2010 federal habeas corpus action, which the Fourth Circuit required and "new evidence and exhibits for the § 2244 proceeding." (Id.) Makdessi was able to obtain copies of the new evidence and exhibits from his sister and to purchase copies of the habeas documents from the habeas court, although this process delayed litigation of the § 2244 motion.

In his § 1983 complaint, Makdessi sues Fleming, Clary, Phillips, Bostic, Lee, Felts, Simpson, Davis, Hinkle, Wright, Walls, and Murphy, seeking monetary damages and a transfer to another protective custody unit. He also sues the assistant attorney general (R. Vorhis) who represented the defendants in Makdessi's prior lawsuit and the RNCC warden (B. Wright) for not preventing or correcting the problems with access to legal materials at RNCC.

### Discussion

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). In order to state a claim in any federal civil action, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). To state a

---

[2] Makdessi complains that at RNCC, rather than going to the law library, he may periodically request copies of specific court decisions.

cause of action under §1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution or laws of the United States and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988).

### 1. Bus ride

The Eighth Amendment protects prisoners from cruel and unusual living conditions, but "restrictive and even harsh" conditions "are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). To prove a constitutional claim concerning a particular prison living condition, Makdessi must show that each defendant prison official acted with deliberate indifference with regard to that condition – that each defendant knew, subjectively, the condition presented a substantial risk of serious harm and nevertheless failed to take "reasonable measures" to alleviate the risk of harm. Farmer v. Brennan, 511 U.S. 825, 835-37 (1994). Makdessi must also show that he has sustained a serious or significant mental or physical injury as a result of the challenged condition. Strickler v. Waters, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

Even if Makdessi could show that he suffered some serious injury from the bus ride conditions, the court concludes that his allegations do not support a finding of deliberate indifference. Makdessi asserts that Fleming, Clary, Lee, and Bostic knew of his shoulder problems from his prior lawsuit, in which he claimed that officials aggravated his shoulder pain by forcibly cuffing his hands behind his back. For the bus ride, however, the officers cuffed Makdessi's hands in front of his body. He does not state any facts from which any of these officers knew of a substantial risk that merely holding his television on the bus would aggravate his shoulder pain or cause new problems with his hands as he now alleges. The court must,

therefore, dismiss any § 1983 claim regarding the requirement that Makdessi hold his television on the bus.

### 2. Confiscated law book

In his second claim, Makdessi complains that Felts and Simpson intentionally deprived him of his law book at RNCC, that Phillips and Davis at KMCC knew officers would confiscate the book and failed to prevent that event, and that Ombudsmen Walls and Murphy upheld the confiscation. He also alleges that one or more of these defendants lost or destroyed some documents from his legal paperwork.

Whether inadvertent or intentional, a random "deprivation of property by a state employee does not violate the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful post-deprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984). Because Makdessi possesses tort remedies under Virginia state law to seek reimbursement for the value of his property, see Virginia Code § 8.01-195.3, it is clear that he cannot prevail in a constitutional claim for the loss of his legal documents.

Unlike random losses or destruction of property, deprivations of liberty or property interests accomplished pursuant to official policy sometimes require pre-deprivation procedures. Parratt v. Taylor, 451 U.S. 527, 537 (1981). A post-deprivation remedy for mistaken deprivations will suffice, however, where the interest at stake is adequately protected by such procedures. Zinermon v. Burch, 494 U.S. 113, 128 (1990).

Officers confiscated Makdessi's law book under the VDOC's inmate property procedures, which classify altered property as contraband. Makdessi's submissions indicate that Makdessi received post-deprivation notice of the confiscation and had an opportunity to

challenge it through all levels of the grievance procedures before officials disposed of the book. He has alleged no facts suggesting that these post-deprivation remedies are inadequate to protect an inmate's property interests under such circumstances. For the stated reasons, the court concludes that Makdessi's allegations do not present any procedural due process claim regarding the deprivation of his legal materials and law book.

### 3. No interference with access to courts

Makdessi apparently sues all of the RNCC defendants, Hinkle, and the assistant attorney general under the theory that the uncorrected deprivation of his law book and documents, as well as limited access to legal research materials and a typewriter, have hampered his litigation efforts. In a later "motion for protective order," Makdessi also asserts that Warden Wright ignored his complaints about these problems.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 (1977). Prison law library programs are constitutionally sufficient if they provide inmates the "capability of bringing contemplated challenges to sentences or conditions of confinement before the courts." Lewis v. Casey, 518 U.S. 343, 356 (1996) (emphasis added). The right of access does not require prisons to ensure that an inmate be allowed to "turn[ ] pages in the law library" or have access to every type of legal material he believes he needs for effective litigation. Id. at 337, 355. Finally, an inmate states no actionable access claim absent a specific showing that alleged deficiencies in his access to legal materials actually impeded his efforts to "pursue a [nonfrivolous] legal claim." Id. at 351, 352. Prison

policies that cause mere inconvenience or delay of an inmate's litigation efforts do not violate his right to access the courts. Id. at 351.

Under these principles, Makdessi's allegations do not state any actionable claim that the defendants have unlawfully interfered with his right of access. The need to obtain replacement copies of the missing documents, and to hand write his pleadings instead of typing them, are nothing more than inconvenience, which is not sufficient to raise constitutional concerns. Similarly, Makdessi has not alleged that loss of his book or documents, or his limited access to legal research materials, has prevented him from raising or pursuing any specific claim or argument in his pending court cases. Thus, the court concludes that Makdessi has not stated facts demonstrating that the actions of which he complains have caused actual injury to his litigation efforts so as to implicate his constitutional right of access.

Finally, the court will deny Makdessi's "MOTION FOR ORDER OF PROTECTION" (ECF No. 8), which the court construes as a request for interlocutory injunctive relief. Because his allegations do not demonstrate likelihood of success on a claim of denial of access to the courts or that he will be irreparably harmed in the absence of court intervention, Makdessi has not demonstrated grounds for the extraordinary remedy he seeks. Real Truth About Obama, Inc. v. FEC, 575 F.3d 342, 346-47 (4th Cir. 2009), vacated on other grounds by 559 U.S. 1089 (2010), reinstated in relevant part by 607 F.3d 355, 355 (4th Cir. 2010) (finding that party seeking the preliminary injunction must make a clear showing "(1) that he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) an injunction is in the public interest") (citation omitted).

## Conclusion

For the reasons stated, the court dismisses Makdessi's complaint without prejudice, pursuant to § 1915A(b)(1), for failure to state any constitutional claim,[3] and denies his motion for interlocutory injunctive relief. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This ___5ᵗʰ___ day of May, 2014.

_Jim Conrad_

Chief United States District Judge

---

[3] To the extent that Makdessi seeks to bring any claim under state law based on these allegations, such claims are not independently actionable under § 1983, Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985), and the court declines to exercise supplemental jurisdiction over them in this action. See 28 U.S.C. § 1367(c). Therefore, the court dismisses any such claims without prejudice.